Lester BROOKS *v.* STATE of Arkansas

CA CR 92-542                                   845 S.W.2d 530

Court of Appeals of Arkansas
Division I
Opinion delivered January 27, 1993

*William R. Simpson, Jr.*, Public Defender, by: *Thomas B. Devine*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clementine Infante*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Lester Brooks was a passenger in an automobile stopped by Little Rock police after a tip that the occupants of the car were "doing dope." A search of the car produced rock cocaine, drug paraphernalia, and a pistol. As a result appellant was charged with possession of a controlled substance, possession of a firearm, possession of drug paraphernalia, and being a habitual criminal. Appellant was convicted in a bench trial only of possession of drug paraphernalia, and he was

sentenced as a habitual offender to ten years in the Arkansas Department of Correction with four years suspended. Appellant filed a pretrial motion to suppress all the physical evidence seized from the car alleging that the officers did not have "reasonable suspicion" to stop it. The motion was denied.

Little Rock police officer Sammy Gately testified that on May 29, 1991, at approximately 8:30 p.m., he was flagged down by a citizen and informed of criminal drug activity associated with a car. Specifically, the citizen told the officer that there were three people in the car and that all of them were smoking crack cocaine. The citizen gave a description of the people in the car, and while this was being told to the officer, the vehicle drove by. The officer followed it to Roosevelt and Wolfe where a "uniform police car" stopped the vehicle. According to Officer Gately, when the driver got out, a small rock that appeared to be crack cocaine was lying on the driver's seat, and a plastic baggie containing a white powder residue believed to be cocaine was visible on the floorboard. As appellant exited the vehicle on the passenger's side, Officer Gately said he observed the grip of a pistol and a clear "crack smoking pipe" partially under the passenger seat. The officer said he retrieved both items and that the gun had five live rounds in it. He also related that a female passenger in the back seat had her feet on a "metal crack smoking pipe" and that a check of the serial number of the gun showed it to be stolen.

The following dialogue then took place:

Q. So, you stopped and you talked to this citizen. Did you get a name of this citizen?

A. No, ma'am.

Q. Had you ever talked with the citizen before?

A. No.

Q. Did you know whether the citizen was a reliable informant?

A. No.

. . . .

Q. Okay. And you didn't know the citizen from anybody

else?

A. Unh un.

Q. Okay. When you pulled this vehicle over - You said you followed it and you pulled it over at Roosevelt and Wolfe Street. You pulled it over based on that information. Is that correct?

A. Yes, ma'am.

Q. You didn't pull it over based on anything that you saw in that vehicle?

A. No.

Q. So, at the time that you pulled that vehicle over you had not seen any kind of suspicious activity going on in the vehicle. Had not seen any criminal activity.

A. No, ma'am.

Q. Nothing to make you believe or cause you reasonable suspicion to believe that there was any criminal activity going on in that vehicle?

A. I did not witness any criminal activity in the vehicle.

Q. Is that citizen here today to testify in this case?

A. Not to my knowledge.

Based on the citizen's information and on his observation that the vehicle was driving back through a neighborhood it had just left, Officer Gately said he radioed a patrol car to pull the vehicle over. Officer Gately elaborated on redirect:

A. The citizen described the vehicle, gave us a license number off the vehicle, described the occupants of the vehicle. When the vehicle came back through, he said, "There is the vehicle." When I saw the vehicle, there was three occupants just like he described. The license number was the same as he gave us.

Q. Okay. So, he actually pointed it out?

A. Yes, ma'am.

In *Terry* v. *Ohio*, 392 U.S. 1 (1968), the United States

Supreme Court held that the police can briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot." This policy has been adopted in this state as Arkansas Criminal Procedure Rule 3.1 which provides in pertinent part as follows:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person he reasonably suspects is committing, has committed, or is about to commit (1) a felony or (2) a misdemeanor involving danger or forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or determine the lawfulness of his conduct.

Rule 2.1 of the Arkansas Rules of Criminal Procedure defines "reasonable suspicion" as follows:

> "Reasonable suspicion" means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

We think the trial court was correct in refusing to suppress the evidence seized from the car in which the appellant was riding. Criminal Procedure Rule 3.1 permits an officer to stop and detain a person the officer "reasonably suspects" may be engaged in criminal conduct, and we think under "a consideration of the total circumstances" there were "particularized, specific reasons for a belief" that appellant might be engaged in criminal activity. *See Stout* v. *State*, 304 Ark. 610, 804 S.W.2d 686 (1991).

Appellant argues that the physical evidence should have been suppressed based on *Lambert* v. *State*, 34 Ark. App. 227, 808 S.W.2d 788 (1991), which he interprets as holding that "an anonymous tip in and of itself was not sufficient reasonable suspicion" to warrant the stop. In *Lambert* the Arkansas State Police received a tip on July 27, 1989, on their "Drug Hot Line"

that at approximately 3:00 p.m. a vehicle would be leaving Hot Springs headed for Little Rock, carrying about ten pounds of marijuana. The vehicle was described by the tipster as being a truck with a black tractor with "Woodline Motor Freight" in orange letters on the side carrying a short-bed trailer and would be driven by a man named Jerry. Surveillance was set up, and at 3:50 p.m. a truck identical to the description was spotted and was pulled over by a state trooper. The driver's name was Jerry Lambert. Appellant was asked if there was marijuana in the truck. He replied that there was and got a large bag of marijuana out of the truck and gave it to the officer.

This court held:

> [W]e cannot hold that the facts corroborating the tip in the case at bar are sufficient in quality or quantity, under the totality of the circumstances test, to give rise to reasonable suspicion.

34 Ark. App. at 230.

■ We do not consider *Lambert* to be controlling in the instant case. Here a citizen was speaking face to face with the officer, relating criminal activity that he had observed. He supplied the officer with the description of the vehicle, its occupants and its license number. Furthermore, as they were speaking the car passed and the citizen pointed it out to the officer. Under these circumstances we think there was "reasonable suspicion" for the officer to stop the car. We think the "indicia of reliability" to justify the investigatory stop in this case was as great as that approved in *Alabama* v. *White*, 496 U.S. 325 (1990).

Affirmed.

JENNINGS, C.J., and PITTMAN, J., agree.