Paul FRETTE *v.* CITY OF SPRINGDALE

CR 97-712 959 S.W.2d 734

Supreme Court of Arkansas
Opinion delivered January 15, 1998

*Kenneth Osborne*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. The primary issue in this case is whether a police officer acted lawfully in ordering appellant, Paul Frette, the occupant of a parked tractor-trailer, out of his vehicle. The officer, who suspected that Frette was intoxicated, acted solely on the basis of a tip phoned in by an identified citizen informant. We conclude that the tip carried with it sufficient indicia of reliability to give the officer reasonable suspicion to justify an investigatory stop. Accordingly, we affirm the trial court's denial of appellant's motion to suppress.

While there was no testimony taken in the case, the parties stipulated to the following facts. At 6:51 p.m. on June 15, 1995, Jerry Smith, a truck driver from Jonesboro, Georgia, phoned in a tip to the Springdale Police Department. Smith provided the radio dispatcher with his name, address, and occupation. He stated that he had observed an elderly male in a red Volvo tractor-trailer drinking beer in the cab of his vehicle in the commercial truck parking lot behind the McDonald's restaurant located on West Sunset in Springdale. The lot had nine spaces designated for commercial vehicles. The police department had no prior dealings with Smith. At 7:02 p.m., Officer Kwano responded to the dispatch and discovered that Frette was behind the wheel inside a red tractor-trailer parked immediately behind McDonald's in the designated parking area.

Officer Kwano approached the vehicle and ordered Frette to step out of the vehicle. When Frette exited, Officer Kwano noticed the strong smell of intoxicants on Frette, who swayed as he spoke. Frette failed various field-sobriety tests and was arrested at 7:49 p.m. A test performed at the police station revealed that Frette had a .08% blood-alcohol content.

Frette was found guilty in municipal court of driving while intoxicated as a holder of a commercial driver's license. On appeal to circuit court, Frette filed a motion to suppress his "statements. . .blood alcohol analysis, physical description [of Frette],

statements of an informant, descriptions of field sobriety tests, and a physical [of Frette]" on the ground that this evidence was obtained as a result of an illegal seizure. The trial court denied the motion to suppress, and accepted Frette's conditional guilty plea to one count of driving while intoxicated while holding a commercial driver's license. Pursuant to Ark. R. Crim. P. 24.3(b), Frette's plea was conditioned on an appeal of the trial court's adverse ruling on his pretrial motion to suppress.

The Court of Appeals reversed and remanded, holding that the trial court erroneously denied the motion to suppress. *Frette v. State*, 58 Ark. App. 81, 947 S.W.2d 15 (1997). We granted the State's petition for review, and now review the case as though it was originally filed with this court. *McElhanon v. State*, 329 Ark. 261, 948 S.W.2d 89 (1997); *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997).

*1.*

██ ██ We first consider Frette's challenge to the sufficiency of the evidence and the factual basis for his plea. Frette entered a conditional guilty plea pursuant to Ark. R. Crim. P. 24.3(b), which provides:

> With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty. . . reserving in writing the right, on appeal from the judgment, to review of an adverse determination of a pretrial motion to suppress evidence. If the defendant prevails on appeal, he shall be allowed to withdraw the plea.

As a general rule, one is not allowed to appeal from a conviction resulting from a guilty plea, aside from jurisdictional defects. Ark. R. App. P.—Crim. 1(a). However, "Rule 24.3(b) presents an exception to the rule but only for the purpose of determining on appeal whether an appellant should be allowed to withdraw her plea if it is concluded that evidence should have been, but was not, suppressed." *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997). This court has strictly construed the permissible scope of an appeal under Rule 24.3(b). In *Wofford* the appellant entered a conditional guilty plea under Rule 24.3(b) and we declined to address an upward departure from the sentencing guidelines and an alleged

violation concerning cameras in the courtroom because these points did not concern "suppression of evidence." *Id. See also Jenkins v. State*, 301 Ark. 586, 786 S.W.2d 566 (1990) (declining to reach the merits of a speedy-trial argument when the appellant entered a Rule 24.3(b) conditional plea of nolo contendere on the charge). Likewise, we decline to reach the merits of Frette's challenge to the sufficiency of the evidence and the factual basis for his plea.

## 2.

We next consider the trial court's adverse determination of Frette's pretrial motion to suppress evidence. In reviewing the denial of a motion to suppress, this court makes an independent examination based on the totality of the circumstances. *Mullinax v. State*, 327 Ark. 41, 938 S.W.2d 801 (1997), *cert. denied*, 117 S. Ct. 2411 (1997); *Norman v. State*, 326 Ark. 210, 931 S.W.2d 96 (1996). The evidence is viewed in the light most favorable to the State as appellee, and this court will reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Id.*

This court has previously categorized police–citizen encounters into three categories:

> The first and least intrusive category is when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the fourth amendment. . . The second police encounter is when the officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that person has committed or is about to commit a crime. . . . The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. The final category is the full-scale arrest, which must be based on probable cause. . . .

*Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990) (citing *U.S. v. Hernandez*, 854 F.2d 295 (8th Cir. 1988)) (citations omitted). In the present case, Officer Kwano's actions in ordering Frette out of his parked truck to investigate the DWI tip falls into

the second category, a "seizure" under the Fourth Amendment requiring "[t]he police officer. . . to be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Terry v. Ohio*, 392 U.S. 1 (1968). In *Thompson, supra*, we held that an officer with reasonable suspicion under Ark. R. Crim. P. 3.1 to suspect that the occupant of a parked vehicle was about to commit a DWI could ask the occupant to exit his car. Likewise, other courts have recognized that an officer with reasonable suspicion to conduct an investigatory stop may order an occupant out of a parked vehicle. *See, e.g., Popple v. State*, 626 So.2d 185 (Fla. 1993); *Johnson v. State*, 658 S.W.2d 623 (Tex. Crim. App. 1983), *overruled on other grounds*, 1997 WL 685978 (Tex. Crim. App. 1997); *People v. Freeman*, 320 N.W.2d 878 (Mich. 1982); *People v. Harrison*, 443 N.E.2d 447 (N.Y. 1982).

■ Frette challenges the legality of his detention under Ark. R. Crim. P. 3.1, governing investigative stops:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

"Reasonable suspicion" is further defined by our rules of criminal procedure as:

> [A] suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

Ark. R. Crim. P. 2.1. The justification for an investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized and articulable reasons indicating the person or vehicle may be involved in criminal activity. *Kilpatrick v. State*, 322 Ark. 728, 912 S.W.2d 917 (1995) (quoting *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284 (1982)).

The substance of Frette's argument is that the tip was provided by an unreliable informant over the telephone, making the information provided in the tip insufficient to give Officer Kwano the reasonable suspicion necessary to conduct an investigatory stop. Frette cites cases generally dealing with the sufficiency of information provided by informants in establishing reasonable suspicion. For example, in *Adams v. Williams*, 407 U.S. 143 (1972), the United States Supreme Court examined whether a police officer legally conducted an investigatory stop pursuant to *Terry, supra*. The officer justifiably responded to an informant's tip that the respondent was carrying narcotics and a gun, in part because "[t]he informant was known to [the police officer] personally and had provided him with information in the past." *Adams, supra*. Additionally, the informant provided the information to the officer personally, making the case "stronger" than in the case of an anonymous telephone tip. *Adams, supra*. These facts, while perhaps insufficient to justify a warrantless arrest or a search warrant, provided "enough indicia of reliability" to justify a *Terry* stop. *Adams, supra*.

*Adams* was later cited by the Supreme Court in *Alabama v. White*, 496 U.S. 325 (1990), a case involving an anonymous tipster who telephoned the police and informed them that the respondent would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with a broken taillight. The informant added that the respondent would be going to Dobey's Motel, and that she was carrying an ounce of cocaine in a brown attache case. Officers went to the Lynwood apartments and observed a station wagon matching the precise description provided by the informant, and saw the respondent leave the 235 building and enter the station wagon. When the respondent proceeded to drive on the highway where Dobey's Motel was located, the officers had a patrol car pull the vehicle

over. The respondent consented to a search of her vehicle which resulted in the discovery of controlled substances.

The Supreme Court held that the police conducted a valid *Terry* stop. In examining whether the anonymous tip carried with it sufficient indicia of reliability by analogy to the totality of the circumstances approach to determining whether an informant's tip establishes probable cause under *Illinois v. Gates*, 462 U.S. 213 (1983), the Court concluded that the tip, "standing alone," "would not 'warrant a man of reasonable caution in the belief that [a stop] was appropriate.'" *White, supra* (quoting *Terry, supra*). However, at the time the officers made the stop, the tip had been sufficiently corroborated to give them reasonable suspicion. The woman left the 235 building and entered a car matching the description provided by the informant. Evidence also demonstrated that the respondent left the building in the time frame suggested by the informant. Finally, the respondent was travelling on the most direct path to the destination given by the informant. This independent corroboration, in addition to the informant's ability to predict the respondent's future behavior, provided "sufficient indicia of reliability to justify the investigatory stop of respondent's car." *White, supra.*

*White* was relied upon by the Court of Appeals in *Lambert v. State*, 34 Ark. App. 227, 808 S.W.2d 788 (1991), where an anonymous tipster (identified as "someone from Little Rock") informed the police that a man named "Jerry" would be leaving the Hot Springs area at a specific time, driving a "Woodline Motor Freight" truck with a shortbed trailer, and carrying about ten pounds of marijuana. Acting on this tip, the police officer set up surveillance and stopped a truck matching this description at the given time. After the driver identified himself as "Jerry Lambert" the officer *Mirandized* the driver who in turn showed the officer the marijuana that he was carrying.

Comparing the facts of the case to those presented in *White, supra*, the Court of Appeals held that the officer lacked reasonable suspicion to stop the driver under Rule 3.1. In so holding, the court emphasized that unlike *White*, the police had no informa-

tion concerning the departure point of the driver or if the vehicle was travelling to the location predicted by the informant. The Court of Appeals also held that the police lacked reasonable suspicion under *Kaiser v. State*, 296 Ark. 125, 752 S.W.2d 271 (1988). In *Kaiser* this court held that the police lacked reasonable suspicion to stop a vehicle suspected of carrying contraband when the information was provided by the Missouri State Police, who in turn told Arkansas authorities that the "information came from a reliable informant." While the informant providing the information to the Missouri State Police may have been reliable, and the Missouri State Police may have had reasonable suspicion concerning Kaiser, "the record is devoid of evidence supporting that conclusion." *Id*.

Another case relied on by Frette is *Evans v. State*, 33 Ark. App. 184, 804 S.W.2d 730 (1991), where a person identifying herself as Irene Smith called the North Little Rock police and told them her daughter was being held at gunpoint in an apartment at 1600 North Main Street. She told the police that she obtained this information from her son and gave the police her number. When a dispatcher called the woman back to tell her that no one discovered anything at 1600 North Main, Ms. Smith attempted to clarify the location of the residence and reiterated that the address was 1600 North Main. An officer responded to 1600 North Main and concluded that no crime had occurred there. At the same time, another officer partner entered a dwelling at 1516 North Main and reported that there were several marijuana plants there.

The Court of Appeals held that the police lacked probable cause to make the warrantless entry into 1516 North Main. The basis for the officer's intrusion was a call to respond to 1600 North Main, and they had no information that a felony had been or was being committed at 1516 North Main. The *Evans* court also concluded that the evidence indicated that the officers did not know which house they were looking for and were conducting a random search of the area. The Court of Appeals reasoned that the case was controlled by *Mitchell v. State*, 294 Ark. 264, 742 S.W.2d 895 (1988), where this court held that the police lacked probable cause to make a warrantless entry into a home when an anonymous caller claimed that a person had been shot at a particular

address and was dead. The caller's main concern was that she did not want a dead person in the house, and provided no other information that the person might be alive or that anyone else was in danger. "The identity of the caller was anonymous; one could only speculate as to the reliability of the caller." *Id.* (citing *Burks v. State*, 293 Ark. 374, 738 S.W.2d 399 (1987), *overruled on other grounds*, 329 Ark. 422, 948 S.W.2d 557 (1997) (holding that several anonymous calls implicating appellant in robbery were "unverified anonymous telephone tips" that did "not support or contribute to a probable cause determination")). The *Evans* court read *Mitchell* and the cases cited therein to conclude that:

> The mere fact Irene Smith identified herself in no way established her trustworthiness. Moreover, there is nothing in the record regarding the trustworthiness or even the name of Ms. Smith's son, the informant who gave her the information she relayed to the police. In determining probable cause, the pivotal question is reliability of the information on which the officers rely. The record does not show that either Irene Smith or her son were known to the police officers or known by them to be trustworthy.

*Evans, supra.*

A more recent case showing the inadequacy of an anonymous tip is *Hammons v. State*, 327 Ark. 520, 940 S.W.2d 424 (1997), where the police received two anonymous phone calls. Both calls provided detailed information about a drug dealer and where he was going to be; one of the calls specified where he would be that night and what vehicle he would be driving. An officer went to the restaurant parking lot where the tipster said the dealer would be, and eventually saw a car in the lot matching the description with two people sitting in the car. The dome light of the car was on, and as the officer pulled up to the car the occupants began acting as if they were trying to conceal something. Once the officer saw one of the passengers reach for a gun, he drew his weapon and ordered the occupants out. This resulted in the discovery of contraband.

In determining whether the officer conducted a valid Rule 3.1 investigatory stop, the court cited to *White, supra*, and *Lambert, supra*, to hold that the anonymous tips in and of themselves were insufficient to give the officer reasonable suspicion to conduct an

investigatory stop. "Had this been a case where [the officer] stopped, detained, and then arrested [the appellant] solely on the basis of the anonymous tips, we would reverse the trial court." *Hammons, supra.* However, the court concluded that the officer's pulling up to the vehicle was a mere Rule 2.2 encounter, and that subsequent developments in the parking lot gave the officer reasonable suspicion to warrant a Rule 3.1 stop.

■ Taking all of these cases into consideration, it is clear that the informant in the present case was more than an anonymous informant. It is undisputed that Smith provided the police with his name, address, and occupation. In discussing victim–witness informants, Professor LaFave observes that courts "quite frequently" find that information is presumed reliable when it comes from an identified person. WAYNE LAFAVE, SEARCH & SEIZURE § 3.4(a) (3d ed. 1996). For example, in *State v. Evans*, 692 So.2d 216 (Fla. Dist. Ct. App. 1997), a McDonald's employee phoned in a call to the police that a patron smelled of alcohol and was intoxicated. An officer came to the McDonald's and the employee pointed out the vehicle that the patron was driving. The officer later stopped the suspect and the Florida Court of Appeals held that the officer had reasonable suspicion to conduct the stop. In rejecting the appellant's contention that the caller was an "anonymous informant," the *Evans* court emphasized that the caller "provided her name, location, and occupation to the police." *Id.* Although the investigating officer did not have all of this information given by the caller to the dispatcher, it was imputed from the dispatcher to the officer. Even considering only what the officer actually knew, the caller's identity was "readily ascertainable" because the officer knew that the caller was a McDonald's employee and the two acknowledged each other on the scene. "The cases support the proposition that an informant's actual name need not be known so long as her identity is readily discoverable." *Id.* (citing *Lachs v. State*, 366 So.2d 1223 (Fla. Dist. Ct. App. 1979) ("This was not an anonymous tip from an unknown tipster, it was a telephoned complaint from an identified citizen who gave his occupation and address, the latter well-known to the police.")).

While it is true that the Arkansas Court of Appeals in *Evans v. State, supra,* declined to hold that a telephone tip from a person who identified herself by name and telephone number was reliable, the case is distinguishable from the present case in all significant respects. *Evans v. State* involved probable cause to make a warrantless entry into a residence. Moreover, the caller was relaying information that she did not personally observe, and no criminal activity was discovered at the address provided. In fact, the Court of Appeals concluded that the police were simply conducting a random search of the area by entering the residence at issue.

█ In sum, none of the cases cited by Frette require us to hold that the information provided by an informant is *per se* unreliable simply because the information was provided over the telephone and the police had no prior dealings with the informant. Significantly, the tipster identified himself by name, address, and telephone number, allowing the police to ascertain the caller's identity. Perhaps more importantly, Frette fails to recognize the different considerations present where information has been provided by a citizen or a witness to a crime, as opposed to informants who are typically unnamed police contacts and who are usually themselves criminals. Professor LaFave has noted that "[c]ourts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen who has found himself in the position of a crime victim or witness. . . . Basis of knowledge is likewise less of a problem in the victim-witness case, for by definition the victim or witness is reporting first-hand knowledge." LaFave, *supra* at § 3.4(a). He also suggests that, at least with respect to veracity, the police should generally be allowed to assume that they are dealing with a credible person when an average citizen tenders information to the police. LaFave, *supra* at § 3.4(a).

This court has afforded added reliability to citizen-witness informants in various contexts. *See Humphrey v. State,* 327 Ark. 753, 940 S.W.2d 860 (1997) (information from witness entitled to added reliability in making warrantless arrest even though witness had proven unreliable in a prior, unrelated criminal investigation);

*Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996) (considering sufficiency of information in affidavit giving probable cause to arrest — "no additional support for the reliability of witnesses is required where the witness volunteered the information as a good citizen and not as a confidential informant whose identity is to be protected."); *Simmons v. State*, 278 Ark. 305, 645 S.W.2d 680 (1983) (involving the reliability of the informants used in a search warrant's supporting affidavit — informants were not "confidential informants" but rather "[t]hey volunteered information simply as good citizens. The police necessarily rely upon such information every day in the course of their work, without first exploring abstract issues of credibility. Hence no additional support for the reliability of [the informants] was required."). In *Brooks v. State*, 40 Ark. App. 208, 845 S.W.2d 530 (1993), a citizen flagged down an officer and informed him that three people were in a car smoking crack. While the citizen was giving a description of the car to the officer, the car drove by. The officer followed the vehicle and it was stopped, resulting in the discovery of controlled substances and the appellant's arrest. The Court of Appeals held that this was a valid investigatory stop under Rule 3.1. While the appellant alleged that the information forming the basis of the reasonable suspicion was an anonymous tip, the *Brooks* court rejected this argument emphasizing that the citizen spoke face-to-face with the officer, and provided a description of the vehicle, its occupants, and the license number. The citizen additionally identified the car as it drove by. "We think that the 'indicia of reliability' to justify the investigatory stop in this case was as great as that approved in *Alabama v. White*, [*supra*]." *Brooks, supra*.

Other jurisdictions have specifically dealt with citizen–witness informants who have reported incidents of people driving while intoxicated. In these cases, the officers had reasonable suspicion to justify an investigatory stop of the suspected drunk driver acting on the tip alone, without the officers having independently observed criminal activity on the part of the suspect. *See, e.g.*, *State v. Evans, supra*; *State v. Sailo*, 910 S.W.2d 184 (Tex. Ct. App. 1995) (information given by unknown citizen-informant sufficient where citizen drove up to officer during traffic stop and told

him about possible drunk driver approaching scene — officer sufficiently corroborated enough information to justify stop); *City of Beachwood v. Sims*, 647 N.E.2d 821 (Ohio Ct. App. 1994) (reasonable suspicion for investigatory stop where citizen-informer phoned that he was following a driver that was driving erratically — officer responded to address given by informant and informant pointed out vehicle to officer); *State v. Bridge*, 452 N.W.2d 542 (Neb. 1990) (investigative stop justified where informant, a fellow officer in the same department, communicated to the investigating officer that he had smelled alcohol on defendant's breath and was concerned that he was driving intoxicated — description of vehicle and license number given); *State v. Ege*, 420 N.W.2d 305 (Neb. 1988) (gas-station employee approached officer and told her that he personally observed motorist drive over curb and smelled alcohol on the motorist's breath while in service station — this provided "reasonable basis" for the officer's investigative stop although officer did not observe traffic violations while she was following motorist); *compare with People v. Donnelly*, 691 P.2d 747 (Colo. 1984) (citizen-informer rule inapplicable where it was ambiguous whether the "witness's" knowledge of the drunk driver came from first-hand knowledge).

In *State v. Bybee*, 884 P.2d 906 (Or. Ct. App. 1994), the police received a call from a convenience-store employee who reported as follows:

> [I] wanted to report a drunken driver. [I'm] working down here at Ninth Street 7-11. He came in just a minute ago. He's driving a blue, looked like a MG, an older little sports car convertible rag top.

The caller then gave the vehicle's license number, "RYG 126," and the direction the car was heading on a particular street. An officer who received the dispatch noticed a blue convertible heading the same direction on the street given in the dispatch. While he observed no unusual driving patterns, he stopped the vehicle solely because of the report he received from the dispatch. He reported that the correct license number was "RYC 126"; the driver was arrested for DUI.

██ ██ The Oregon Court of Appeals held that the officer had reasonable suspicion to justify the stop under the totality of the circumstances. When reasonable suspicion is based solely on a citizen-informant's report, the report must contain some indicia of reliability. Three factors in determining indicia of reliability are as follows: 1) whether the informant was exposed to possible criminal or civil prosecution if the report is false; 2) whether the report is based on the personal observations of the informant; and 3) whether the officer's personal observations corroborated the informant's observations. *Id.* The first factor is satisfied whenever a person gives his or her name to authorities or if the person gives the information to the authorities in person. *Id.* With regard to the second factor, "an officer may infer that the information is based on the informant's personal observation if the information contains sufficient detail that 'it [is] apparent that the informant had not been fabricating [the] report out of whole cloth. . . [and] the report [is] of the sort which in common experience may be recognized as having been obtained in a reliable way.'" *Id.* (quoting *Spinelli v. United States*, 393 U.S. 410 (1969)). The third and final element may be satisfied if the officer observes the illegal activity or finds the person, the vehicle, and the location as substantially described by the informant. *Bybee, supra.*

The *Bybee* court examined these factors and concluded that the informant's report had sufficient indicia of reliability. First, the clerk gave his name, location, and number to the police, exposing himself to liability if the report proved false. Second, portions of the clerk's report indicated that he had personally seen the defendant, "he came in just a minute ago," "he's driving," "he was heading South on Ninth." *Bybee, supra.* Finally, the officer was able to corroborate the informant's observations; he saw a small blue convertible driving on the same street and in the same direction as reported.

The same court reached the opposite result in *State v. Villegas-Varela*, 887 P.2d 809 (Or. Ct. App. 1994), where the officer received a dispatch that a caller had reported an "intoxicated driver operating a small red vehicle with four subjects in it. The vehicle was driving erratically all over the road." The caller gave the vehicle's license number, but failed to disclose his location, the suspect

vehicle's location, or a description of the occupants. Additionally, the caller did not identify himself, stating only that he was a member of a particular citizens' watchdog group. An hour later, the officer followed a red vehicle with four occupants into a parking lot, even though he did not observe any traffic violations. The license number matched the one called in, and the defendant, an occupant, was ultimately arrested for DUI.

The *Villegas-Varela* court concluded that the trial court erred in denying the appellant's motion to suppress. In examining whether the citizen's report contained indicia of reliability under the three factors outlined above, the court determined that it did not. First, the informant did not give his name or telephone number to the dispatcher. Thus, the informant was not exposed to civil or criminal liability if the report proved false. Second, the officer did not sufficiently corroborate the information provided. While he saw a small red car with four occupants, the caller did not give a description of the defendant or any of the car's occupants, and did not give a location of the car or its direction. "[W]e cannot say that the defendant and his car were found at a time and location consistent with their location at the time of the report. Consequently, we cannot say that [the officer] corroborated the report when he saw a small red car driving south on Portland Road 80 minutes later." *Id.* Given these two factors, the officer lacked reasonable suspicion to stop the defendant's car.

In *Kaysville City v. Mulcahy*, 943 P.2d 231 (Utah Ct. App. 1997), Dewyane Olsen reported to the police that a drunk individual had been at his front door and had driven away in a white car, "a Toyota Celica, maybe." Olsen said that the car left his subdivision and stated that it was going "east" "on the main road that goes in front of Davis High School." Olsen believed that the driver's name was Joe, and he gave the dispatcher what he thought was Joe's phone number. An officer near the high school saw a white car "as described in the dispatch." After stopping the car and speaking with the driver, the officer smelled alcohol and arrested the driver for DUI.

The *Mulcahy* court framed the issue as "whether reasonable suspicion may be based on an informant's report of a drunk driver,

absent corroboration by a police officer of traffic violations or intoxication." *Id.* Like the Oregon Court of Appeals above, the Utah Court of Appeals used three factors in determining the reliability and sufficiency of the informant's report. The first factor was the "type of tip or informant involved." By contrast to an anonymous caller, "an identified 'citizen-informant' is high on the reliability scale," and "[t]he ordinary citizen-informant needs 'no independent proof of reliability or veracity.'" *Id.* The second factor was "whether the informant gave enough detail about the observed criminal activity to support a stop." *Id.* Regarding this factor, the court noted that a tip is more reliable if the informant observed the details personally, as opposed to passing on information from a third party. The final factor considered is whether the officer's personal observations confirm the informant's tip.

Applying these factors, the *Mulcahy* court noted that Olsen was an identified citizen-informer, providing information as a witness. By giving his name and address, he exposed himself to prosecution for making a false report. Second, Olsen's description was sufficiently detailed — he reported a "drunk individual" at his front door who drove off in a white car (possibly a Celica) out of the subdivision on the main road in front of the high school. Moreover, Olsen personally observed these details. Finally, the officer corroborated the informant's report by finding "the described vehicle going in the direction and on the highway reported by the caller," only a few minutes after the dispatch. *Id.*

Before turning to the analysis in the present case, we would be remiss in not first emphasizing the significant policy considerations present where a tip reports a driver who is drinking. This court has previously recognized the magnitude of the State's interest in eliminating drunk driving in comparison to relatively minimal intrusions on motorists. *See Mullinax v. State*, 327 Ark. 41, 938 S.W.2d 801 (1997). In balancing the rights of a motorist to be free from unreasonable intrusions and the State's interest in protecting the public from unreasonable danger, one court has stated that "[a] motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible. . . . The 'totality' of circumstances tips the balance in favor

of public safety and lessens the. . . requirements of reliability and corroboration." *Mulcahy, supra,* (quoting *State v. Tucker,* 878 P.2d 855 (Kan. Ct. App. 1994)).

 The three-factored approaches adopted by the Oregon and Utah Courts of Appeals provide a useful analytical framework in the present case. First, Smith, a citizen informant, identified himself by name, address, and occupation, exposing himself to potential prosecution for making a false report. *See* Ark. Code Ann. § 5-54-122 (Repl. 1993). As such, Smith's tip ranks high on the reliability scale — more than an anonymous caller or a confidential informant from the "criminal milieu." Second, it is undisputed that Smith personally observed the alleged criminal activity, providing a basis of knowledge for the tip. Finally, Officer Kwano's own observations substantially corroborated Smith's report. He arrived at the exact location specified by Smith, only minutes after the tip was received. While there, he discovered the described vehicle with an older man sitting in the cab. Accordingly, we conclude that under the totality of the circumstances, Smith's tip carried with it sufficient indicia of reliability to justify an investigatory stop under Rule 3.1. The trial court did not clearly err in denying Frette's motion to suppress.

Affirmed; Court of Appeals reversed.

ROBERT L. BROWN, Justice, concurring. I disagree that when Officer Kwano ordered or requested Paul Frette to come down from the cab of his truck, this was a seizure. The dispatcher of the Springdale Police Department had received a tip from a Jerry Smith, who identified himself as an out-of-state truck driver. Smith told the police dispatcher that Frette was drinking beer in the cab of his truck. As the majority makes clear, the Springdale Police Department had had no prior dealings with Jerry Smith. Clearly, the tip could have been as bogus as it could have been real. The information needed to be verified.

Officer Kwano was dispatched to the scene to investigate. He found an unidentified person sitting in the cab of a truck *but saw no beer.* He ordered him down from his cab in order to assess the situation further. At this point, Officer Kwano was operating,

in my judgment, under Rule 2.2(a) of the Arkansas Rules of Criminal Procedure:

> (a) A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

I cannot conclude that at this moment Frette's liberty was restrained by show of physical force or authority so as to constitute a seizure. *See Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990). Frette was told to come down from his cab. This was for the purpose of answering questions and assessing his condition. Whether Officer Kwano *requested* he come down from his cab or *ordered* him down seems more a question of semantics than a pivotal distinction to me under these circumstances.

Once Frette was out of the cab and face-to-face, Officer Kwano detected the smell of alcohol and noticed that Frette was unsteady on his feet. With this added information, he had reasonable suspicion to stop and detain Frette under Ark. R. Crim. P. 3.1. Field sobriety tests were administered which Frette failed, and he was arrested.

This progression from a tip to a Rule 2.2 investigation to a Rule 3.1 stop-and-detention to an arrest is precisely what this court recently approved in *Hammons v. State*, 327 Ark. 520, 940 S.W.2d 424 (1997). In *Hammons*, the tip was that "Wild Bill," who had sold drugs to the caller's roommate and a woman named Shannon Smith, was coming to Fort Smith to sell methamphetamine. He would be driving a black 70 or 80 model Corvette. He was described as being in his late 30's or early 40's, of slender build, and with a moustache and beard. A second anonymous caller said Wild Bill would be at a particular bar in Fort Smith on a certain night.

A Fort Smith police detective was dispatched to the parking lot of that bar on the suspected night. He approached a black Corvette in his police car and when he saw a man in the Corvette scramble and pull out what he thought was a gun, he activated his blue lights. That constituted a stop. After the stop, what was

believed to be methamphetamine was found on Hammons, and he and his companion were arrested.

We affirmed the denial of Hammons's motion to suppress because the two anonymous calls led the police detective to the parking lot for further investigation under Rule 2.2. The same holds true in the instant case — the unverified tip warranted further investigation. At the parking lot in *Hammons*, the police detective first saw nothing unduly suspicious. In the instant case, Officer Kwano did not see Frette with a beer. Then, in *Hammons* the detective saw scrambling and what he thought was a gun which gave him reasonable suspicion to stop and detain the car's occupants under Rule 3.1. Similarly, the odor of alcohol on Frette and his unsteadiness on his feet gave Officer Kwano reasonable suspicion to stop and detain the man. Drugs were found in Hammons's possession which led to his arrest. Here, Frette failed the field sobriety tests and was arrested. The case of *Hammons v. State, supra*, provides the blueprint for police actions in situations where the tip is open to question, and I would follow it.

The question arises whether a police officer, under this reasoning, could order anyone out of a vehicle for any purpose. The answer, of course, is no. But in this case, the tip provided a basis for further investigation and, without question, the information relating to a potentially inebriated truck driver needed to be checked out immediately and thoroughly.

I would affirm, but for the reasons stated in this opinion.