SLIP OPINION

Cite as 2015 Ark. App. 84

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-14-642

| | |
|---|---|
| | **Opinion Delivered** February 11, 2015 |
| JIMMY DALE KING | APPEAL FROM THE WASHINGTON |
| APPELLANT | COUNTY CIRCUIT COURT [No. CR-2013-1633-1] |
| V. | HONORABLE WILLIAM A. STOREY, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

**LARRY D. VAUGHT, Judge**

Jimmy Dale King was convicted by a Washington County jury of possession of a controlled substance, fleeing, and criminal mischief. On appeal, he argues that the trial court erred in denying his motion to suppress evidence recovered from him upon his arrest, arguing that (1) the investigatory stop was illegal because it was based on information provided by a confidential informant who did not show a substantial indicia of reliability; (2) his unprovoked flight did not establish grounds for arrest; and (3) his arrest was pretextual. We affirm.

At the motion-to-suppress hearing, Fayetteville Police Detective and Narcotics Investigator Jacob Lawson, with the Fourth Judicial Drug Task Force, testified that on August 27, 2013, he received information from a confidential informant, who was being detained at the police station. Lawson testified that the informant, who had been used by other detectives

in Lawson's office,[1] reported that large amounts of methamphetamine were being trafficked by "Big Daddy," from a residence on Green Point Trace. The informant described "Big Daddy" as a black male, with a normal build, approximately 5'11" to 6' tall, weighing approximately 180 pounds, and having closely shaven hair. She stated that she had purchased methamphetamine from "Big Daddy" on multiple occasions.

At the police station around 9:00 p.m., the informant made a telephone call to "Big Daddy," which led to several calls back and forth between them in an effort to set up a meeting place for a drug transaction. Lawson said that he recorded the first call and monitored all of the calls. He said that the informant asked to purchase an ounce of methamphetamine and that the drug seller designated the Value Place Inn parking lot, known for drug activity, as the location for the transaction. The informant described "Big Daddy's" vehicle as a silver Lincoln Navigator with Texas license plates. The informant said that her vehicle was red. Based on the information provided by the informant, Lawson requested that other police officers set up surveillance at the Value Place Inn. Lawson further testified that after 11:00 p.m. that evening, King was arrested, and a plastic baggie of what was suspected to be a controlled substance was confiscated from him. Lawson added that the evidence seized from King was later submitted to the Arkansas Crime Laboratory, which confirmed that the substance was nearly one ounce of methamphetamine.

---

[1]Lawson stated that Detective Holland had previously used this confidential informant and that Holland found her knowledge relating to drug activity to be credible.

Fayetteville Police Detective Anthony Murphy testified that on the evening of August 27, 2013, he was asked to conduct surveillance on a silver Lincoln Navigator with Texas license plates at a residence on Green Point Trace.[2] While watching the subject vehicle, Murphy was advised that the informant had just completed a phone call with the drug seller, and within one minute, a black male matching the informant's description left the residence, entered the Navigator, and drove away. Murphy testified that he could see the vehicle pull into the Value Place Inn.

Fayetteville Police Detective Gene Johnson, with the Fourth Judicial District Drug Task Force, testified that he was conducting surveillance at the Value Place Inn on August 27, 2013, at Detective Lawson's request. Johnson testified that he observed the silver Navigator travel very slowly through the parking lot of the Value Place Inn. Johnson also saw a red vehicle pull into the parking lot and approach the Navigator, at which time he observed the Navigator pause for a minute. When the red car passed by, the Navigator continued through the parking lot and headed back toward Green Point Trace.

Fayetteville Police Officer Tyler Moore testified that on August 27, 2013, he was on patrol near the Value Place Inn in a marked police car and was asked to make contact with a silver Navigator with Texas license plates that had just left the Value Place Inn and was being driven by a black male as described by the informant. Moore said that he was advised that the driver of the Navigator, whom Moore later identified as King, was suspected of having methamphetamine in his possession for a drug transaction that was to have taken place

---

[2]Green Point Trace is approximately a quarter of a mile from the Value Place Inn.

at the Value Place Inn. Moore followed the Navigator as it pulled into a driveway on Green Point Trace. Moore said that King looked back at him (Moore), jumped out of the vehicle, and ran away. Moore's emergency lights and siren were not on. He said that he barely had time to put his car in park. He ran after King, ordered him to stop, but King did not comply. Moore eventually grabbed King by the waist as he tried to scale a fence, damaging it. Another officer helped Moore apprehend King, who continued to resist by kicking at the officers and grabbing wood from the fence and throwing it at them. Once King was handcuffed, Moore found a baggie containing a controlled substance in King's possession.

Fayetteville Police Officer Tanner Jones testified that on August 27, 2013, he was parked in his marked vehicle in the same location as Officer Moore. Officer Jones testified that he was also ordered to make contact with a silver Navigator with Texas license plates that had just left the Value Place Inn and was being driven by a black male as described by the informant. Jones was further advised that the driver was suspected of drug trafficking. After seeing the subject vehicle and driver, whom Jones later identified as King, Jones followed Moore, who was following the Navigator, to Green Point Trace. Jones said that before he had time to turn on his siren and emergency lights, he witnessed King pull into a driveway, look back at the officers, jump out of his vehicle without shutting the vehicle door, and run. Jones chased King and ordered him to stop, but he did not. Jones testified that he assisted Moore in pulling King off the fence and placing him in handcuffs. When the officers returned to their

vehicles with King, they saw what they suspected was a large baggie containing a controlled substance in the waistband of his underwear.[3]

King's arguments in support of his motion to suppress the methamphetamine were that there was a lack of reasonable suspicion to effectuate an investigatory stop (focusing on the lack of reliability of the confidential informant) and that an illegal pretextual stop had been made. The trial court denied the motion, finding that the informant was reliable, that the stop did not occur until the officers apprehended King from the fence, and that the officers had reasonable suspicion based on the totality of the circumstances to believe that King had committed a felony.

At trial, Officers Lawson, Moore, and Jones testified as they did in the suppression hearing. No witness testified for the defense. The jury found King guilty of possession of a controlled substance, fleeing, and criminal mischief. He was sentenced to fourteen years' imprisonment and a fine of $8000 for possession of methamphetamine, along with a concurrent term of nine months' imprisonment in the county jail for the fleeing conviction and a fine of $405 for the criminal–mischief conviction.

King's appeal challenges the trial court's denial of his suppression motion. Our standard of review for a trial court's decision to grant or deny a motion to suppress requires us to make an independent determination based on the totality of the circumstances, to review findings of historical facts for clear error, and to determine whether those facts give rise to reasonable

---

[3]Both Moore and Jones testified that during the struggle with King, his shoes and shorts came off.

suspicion or probable cause, while giving due weight to inferences drawn by the trial court. *Moody v. State*, 2014 Ark. App. 618, at 1–2, 446 S.W.3d 652, 653. We defer to the superiority of the trial court to evaluate the credibility of witnesses who testify at a suppression hearing. *Id.* at 2, 446 S.W.3d at 653. We reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Id.*, 446 S.W.3d at 653.

King's first argument is that the investigatory stop made by officers was illegal because it was not based on reasonable suspicion as required under Arkansas Rule of Criminal Procedure 3.1. More specifically, he contends reasonable suspicion was lacking because the information provided by the informant did not show a substantial indicia of reliability. However, we do not reach this argument because there was no investigatory stop in this case. Before the officers could initiate an investigatory stop, King ran away from them. After chasing him, the officers arrested him. Thus, the appropriate issue is whether there was probable cause to support the officers' warrantless arrest.

A law-enforcement officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed a felony. *Moody*, 2014 Ark. App. 618, at 4, 446 S.W.3d at 654; Ark. R. Crim. P. 4.1(a)(i) (2013). Probable cause to arrest is defined as "a reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that a crime has been committed by the person suspected." *Id.*, 446 S.W.3d at 654. Probable cause to arrest does not require the quantum of proof necessary to support a conviction, and in assessing the existence of probable cause, the appellate court's review is liberal rather than strict. *Id.*, 446 S.W.3d at 654. We look

to the facts within the arresting officer's knowledge—not his stated reasoning—to determine whether those facts are sufficient to permit a person of reasonable caution to believe that an offense has been committed. *Id.*, 446 S.W.3d at 654. Moreover, probable cause to arrest without a warrant may be evaluated on the basis of the collective information of the police. *Id.*, 446 S.W.3d at 654.

King's warrantless arrest was supported by probable cause. The officers received information from a confidential informant that implicated King in felonious criminal activity. The informant reported that large amounts of methamphetamine were being trafficked from a residence on Green Point Trace; that she, on multiple occasions, had purchased methamphetamine from the person residing on Green Point Trace, whom she called "Big Daddy"; she described him as a black male, normal build, standing between 5'11" to 6' tall, weighing approximately 180 pounds, and having closely shaven hair; and she described his vehicle as a silver Navigator with Texas license plates. Additionally, while in the presence of Lawson, she called "Big Daddy" and set up a drug transaction that evening in the parking lot of the Value Place Inn.

King calls into question the reliability of the informant because she was of the "criminal milieu," she did not provide "Big Daddy's" name, any of his unique physical traits, or a more detailed vehicle description. He also argues that there was insufficient testimony about the number of times the informant had been used in prior criminal investigations and the outcome of those investigations.

Reliability of informants is determined by a totality–of–the–circumstances analysis that is based on a three-factor approach adopted by the Arkansas Supreme Court in *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998) (citing *State v. Bybee*, 884 P.2d 906 (Or. Ct. App. 1994)).[4] The factors are (1) whether the informant was exposed to possible criminal or civil prosecution if the report is false; (2) whether the report is based on the personal observations of the informant; and (3) whether the officer's personal observations corroborated the informant's observations. *Id*. at 118, 959 S.W.2d at 741. The *Frette* court examined the satisfaction of these factors:

> The first factor is satisfied whenever [the informant] gives his or her name to authorities or if the person gives the information to the authorities in person. With regard to the second factor, "an officer may infer that the information is based on the informant's personal observation if the information contains sufficient detail that 'it [is] apparent that the informant had not been fabricating [the] report out of whole cloth . . . [and] the report [is] of the sort which in common experience may be recognized as having been obtained in a reliable way.'" The third and final element may be satisfied if the officer observes the illegal activity or finds the person, the vehicle, and the location as substantially described by the informant.

*Id*., 959 S.W.2d at 741 (alteration in original)(quoting *Bybee*, 884 P.2d at 908).

Applying the *Frette* factors to the instant case, the evidence shows that the confidential informant was not an anonymous tipster. Although not named, she was identifiable, known, and in the presence of Officer Lawson; therefore, she was subject to prosecution for making a false report. There was evidence that another detective in Lawson's office had previously

---

[4]While the informant in *Frette* was a citizen and not a confidential informant of "the criminal milieu," we nevertheless apply the three-factor approach set forth in *Frette*. *See Weatherford v. State*, 93 Ark. App. 30, 216 S.W.3d 150 (2005) (applying the *Frette* factors to determine whether information provided by a confidential informant carried with it a sufficient indicia of reliability).

used the informant and found her to be credible in relating drug-trafficking information. The information provided by the informant was based on her personal knowledge and observations as she had had multiple prior dealings with King. The incriminating nature of the informant's information is itself a sufficient basis for finding it to be credible. *Mock v. State*, 20 Ark. App. 72, 78, 723 S.W.2d 844, 848 (1987). Significantly, the officers' investigation and personal knowledge corroborated the information that the informant provided. In fact, within one minute of the informant hanging up with "Big Daddy," King, who matched the physical description given by the informant, left a residence at Green Point Trace; got into a silver Navigator with Texas license plates; drove immediately to the Value Place Inn parking lot, a known drug-transaction location; drove slowly through the lot; and paused when a vehicle passed him that was the same color as the informant's vehicle. Based on this evidence, we hold that the trial court committed no error in finding the confidential informant reliable. *See Blockman v. State*, 69 Ark. App. 192, 11 S.W.3d 562 (2000) (affirming the trial court's denial of a motion to suppress where the information from a known confidential informant about drug trafficking in a location known for that type of activity was evidence of probable cause sufficient to support the defendant's arrest).

Finally, in addition to the confidential informant's information and the officers' corroboration of that information, King's flight is further evidence supporting the existence of probable cause. Flight to avoid arrest is admissible in corroboration of evidence tending to establish guilt. *Mock*, 20 Ark. App. at 79, 723 S.W.2d at 848 (citing *Mason v. State*, 285 Ark. 479, 688 S.W.2d 299 (1985)). Our court in *Mock* further held that flight is likewise a

circumstance to be considered in a determination of probable cause to support a warrantless arrest. *Id.*, 723 S.W.2d at 848. Therefore, we hold that probable cause existed to believe that King had committed a felony. Accordingly, we hold that the officers' warrantless arrest of King was justified under Rule 4.1 and that the trial court did not err in denying the motion to suppress evidence seized upon his arrest.

King's second argument is that his unprovoked flight—alone— did not establish grounds for arrest. However, this argument was not made below; therefore, it is not preserved for appeal. *Van Winkle v. State*, 2014 Ark. App. 591, at 6, 445 S.W.3d 542, 547 (holding that arguments not raised below are not preserved for appellate review) (citing *Jackson v. State*, 2014 Ark. App. 415; *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007)).[5]

King's third and final argument is that his arrest was pretextual. *State v. Sullivan*, 348 Ark. 647, 655–56, 74 S.W.3d 215, 221 (2002) (holding that pretextual arrests—arrests that would not have occurred *but for* an ulterior investigative motive—are unreasonable police conduct warranting application of the exclusionary rule). King maintains that the officers lacked probable cause to arrest him for possession of narcotics; therefore, they arrested him on the lesser crimes of fleeing and criminal mischief. We reject this argument because where there is probable cause to arrest for the greater, more serious offense, the need for a pretext analysis is obviated. *Sullivan*, 348 Ark. at 655, 74 S.W.3d at 220; *see also Romes v. State*, 356 Ark. 26, 45, 144 S.W.3d 750, 762–63 (2004) (holding that where there was probable cause to arrest without a warrant on aggravated-robbery and capital-murder charges, the need to conduct a pretext-arrest analysis is obviated). Here, the officers had probable cause to arrest

---

[5]To the extent that King contends that his flight from officers is not further evidence to be considered in a probable-cause analysis, we disposed of that issue in his first point on appeal.

King for fleeing, criminal mischief, *and* possession of a controlled substance. Accordingly, we affirm the trial court's denial of King's motion to suppress.

Affirmed.

WHITEAKER, J., agrees.

HOOFMAN, J., concurs.

**CLIFF HOOFMAN, Judge, concurring.** I concur with the result reached by the majority. However, I write separately because I cannot agree with the majority's assertion that there was not an investigatory stop and that the "appropriate issue [before this court] is whether there was probable cause to support the officers' warrantless arrest" when this argument was not presented to the trial court or argued by appellant on appeal. Furthermore, the record does not reflect if or when appellant was arrested prior to being taken to jail. Officers Jones and Moore testified at the hearing on appellant's motion to suppress and at trial that they had to pull appellant off a fence and restrain him in handcuffs, but neither officer testified as to when appellant was formally arrested. Specifically, Officer Jones testified at trial that after they pulled appellant off the fence and restrained his hands behind his back, "we placed him in handcuffs and then waited for detectives, the narcotics detectives to come up to us. Like I said, we were just assisting them to make contact with this individual." Additionally, the trial court specifically found that a stop occurred but that the stop did not occur until the appellant was unable to scale a privacy fence and was apprehended by Officers Moore and Jones. Therefore, while I agree that this case must be affirmed, I do so under a different analysis based on appellant's arguments raised on appeal.

At the motion-to-suppress hearing and at trial, appellant argued that the officers lacked reasonable suspicion to effectuate an *investigatory stop*, specifically that the information

11

SLIP OPINION

provided by the informant did not show a substantial indicia of reliability, and that the *investigatory stop* was pretextual. After hearing all evidence presented on these two issues, the trial court orally denied appellant's motion to suppress:

. . . .

> Now, with respect to *the stop*. There's an argument that there was some sort of pretext for the stop. Well, the stop clearly, clearly, did not occur until Officers Moore and Jones saw the Defendant jump out of his vehicle, the silver Lincoln Navigator SUV, and take off running. The stop did not occur until the Defendant, as it turns out, was unable to scale a privacy fence and was apprehended by Officers Moore and Jones. That's clear from the proof. The issue then becomes was this stop legitimate under the provisions of Rule 3.1 of the Arkansas Rules of Criminal Procedure. Clearly, at that point given the information, that the police officers, Officers Moore and Jones had, information which they had received from the DTF officer or officers, plus the information they had received by way of radio traffic, clearly, clearly in my judgment, had reasonable cause or reasonable suspicion that a felony had been committed and therefore, the stop, after the Defendant jumps out of his car and tries to flee, was proper and legitimate in all respects. So for those reasons the Defendant's motion is denied. Thank you.

(Emphasis added). Subsequently, at trial, when the State offered the drug evidence, appellant renewed his objection.

| [APPELLANT'S COUNSEL]: | Your Honor, we object to the admission of State's Exhibit Number 5 under two particular grounds. We renew all previous other motions as to the admission of this evidence and ask the court to reconsider those and then we'd like to specifically point out that we feel that *this stop* was committed without probable cause, specifically under the precedent set in the case of <u>Fowler v. State</u> and we'd like -- we feel that this evidence is not admissible for these reasons. |
|---|---|
| THE COURT: | Well, of course, we've addressed that issue and I'll overrule the objection, admit State's Exhibit 5, 6, and 7. |

(Emphasis added).

On appeal, appellant solely contends that the trial court erred in denying the appellant's motion to suppress. Specifically, appellant argues that (1) the investigatory stop was illegal

because it was based on information provided by a confidential informant who did not show a substantial indicia of reliability, (2) his unprovoked flight did not establish grounds for arrest, and (3) his arrest was pretextual. The State disagrees and argues that the second and third arguments were not preserved for appeal.

Appellant first argues that the information provided by the confidential informant lacked the sufficient indicia of reliability necessary to use such information as a basis of reasonable suspicion in order for the officers to stop King. As support for his argument, he cites to *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998), and this court's decision in *Lambert v. State*, 34 Ark. App. 227, 808 S.W.2d 788 (1991). Appellant alleges that the three-factor test adopted in *Frette* was not met here because the confidential informant was of "the criminal milieu," the "informant's basis of knowledge is prior transactions which could not be confirmed, and too few details were provided or substantially corroborated by officers."

> Arkansas Rule of Criminal Procedure 3.1 provides,
>
> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

"Reasonable suspicion" is defined as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R. Crim. P. 2.1. "The justification for the

investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person may be involved in criminal activity." *Davis v. State*, 351 Ark. 406, 415, 94 S.W.3d 892, 897 (2003). Therefore, the facts articulated by the officer are not viewed in isolation, but are taken together. *Id.* In determining whether an officer had reasonable suspicion, courts must recognize that, "when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *James v. State*, 2012 Ark. App. 118, at 9, 390 S.W.3d 95, 100 (citing *United States v. Cortez*, 449 U.S. 411 (1981)). After applying the *Frette* factors to the instant facts, I agree with the majority that the trial court committed no error in finding the confidential informant reliable. *See Frette*, *supra*; *Weatherford v. State*, 93 Ark. App. 30, 216 S.W.3d 150 (2005).

I also agree with the State that appellant's next two arguments were not preserved for appeal. An issue must be raised before the circuit court to be preserved for appellate review. *Eastin v. State*, 370 Ark. 10, 257 S.W.3d 58 (2007). Furthermore, it is the appellant's burden to ensure that an argument is developed before the circuit court and to obtain a specific ruling. *Id.* Here, the arguments made on appeal were not made before the trial court. Instead, appellant only argued before the trial court that the officers lacked reasonable suspicion to effectuate an investigatory stop and that the investigatory stop was pretextual. He did not argue that appellant's unprovoked flight was an insufficient basis for his arrest, nor did he argue that the arrest itself was pretextual. Furthermore, a specific ruling regarding the arrest was not obtained. Thus, I would affirm the trial court.

*Peter E. Giardino*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Eileen W. Harrison*, Ass't Att'y Gen., for appellee.