John FRAZER *v.* STATE of Arkansas

CA CR 01-1335                                    94 S.W.3d 357

Court of Appeals of Arkansas
Division IV
Opinion delivered December 23, 2002

*Parker Law Firm, Ltd.*, by: *Tim S. Parker*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

JOHN F. STROUD, JR., Chief Judge. John Frazer was found guilty in a bench trial of violation of the Arkansas Implied Consent Law and fined $150; the trial judge found him not guilty of driving while intoxicated. On appeal, Frazer argues that the trial court erred in admitting evidence obtained by a Springdale police officer who stopped his car in Fayetteville because the arresting officer lacked probable cause to stop and arrest him

outside the officer's territorial jurisdiction, and the officer was not in "fresh pursuit" of him when the traffic stop was made. We affirm Frazer's conviction.

Larry Paul Davis, a night pharmacist for a Walgreens drug store in Springdale, testified that he was working on the night of November 13, 2000, and he waited on appellant and a passenger at the drive-thru window. Although Davis only observed appellant and his passenger through the drive-thru window, he stated that appellant's behavior was such that Davis believed he was under the influence of either drugs and/or alcohol, and Davis was concerned that the potential for an accident was present. Based upon these concerns, Davis observed the make of the vehicle appellant was driving and wrote down the license-plate number. Davis then called the Springdale Police Department to report his concerns that appellant was intoxicated based upon the observations he had made at the drive-thru window. He gave the police dispatcher his name, address, telephone number, and his place of employment. He also provided a description of the vehicle and the license-plate number.

Teresa Atwell, a dispatcher for the Springdale Police Department, testified that she dispatched police officers to respond to the reported DWI driver. She said that the caller identified himself and gave a general description of the vehicle. She dispatched the color of the car, the personalized license plate, the fact that the car was leaving Walgreens, and that it was possibly headed for Fayetteville. Although she said that she did not know who the caller was, Atwell testified that the call-taker knew.

Officer Jimmy Chatfield, a police officer with the Springdale Police Department, testified that he received the information from dispatch regarding the make and color of the vehicle, as well as the license-plate number, and that he responded to the call because he was approximately one-quarter of a mile from the Walgreen's store. Chatfield traveled to the Fayetteville city limits, turned around, and began checking traffic traveling toward Fayetteville. He located the car in question, a red Honda, in the Springdale city limits traveling toward Fayetteville, and he turned around and followed it, eventually catching up with the vehicle at the Fayette-

ville–Springdale city limits. He verified that the license–plate number was the same that had been reported. Chatfield said that he did not initiate a traffic stop until he was within the Fayetteville city limits, and that he only stopped the car after he was notified that it was a confirmed car, which meant that the caller had identified himself and an officer was being sent to his location to speak with him. Chatfield said that he did not witness any errant driving on appellant's part; he stopped him only on the basis of the report from the citizen–informant. After stopping appellant, Chatfield gave him field–sobriety tests, which he failed; Chatfield then arrested appellant for DWI and transported him to the Springdale Police Department, where appellant refused to submit to a breathalyzer test.

██ ██  It must first be determined whether the officer had reasonable suspicion to stop appellant's car based upon the tip that Davis provided to the police department. Upon review of a trial court's denial of a motion to suppress, we make an independent determination based upon the totality of the circumstances; the trial court's ruling is reversed only if it is clearly erroneous or against the preponderance of the evidence. *Mullinax v. State*, 327 Ark. 41, 938 S.W.2d 801 (1997). In *Bohanan v. State*, 72 Ark. App. 422, 38 S.W.3d 902 (2001), this court held, citing *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998):

> Arkansas Rule of Criminal Procedure 3.1 provides that an officer may stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit a misdemeanor involving forcible injury to persons or damage to property. When reasonable suspicion is based solely on a citizen-informant's report, the three factors in determining reliability are:
>
> 1. Whether the informant was exposed to possible criminal or civil prosecution if the report is false.
>
> 2. Whether the report is based on personal observations of the informant.
>
> 3. Whether the officer's personal observations corroborated the informant's observations.

*Bohanan*, 72 Ark. App. at 429, 38 S.W.3d at 907. Although appellant contends that this case is not governed by *Frette, supra,*

we hold that *Frette* is determinative and supports a finding of probable cause in the instant case.

In *Frette*, our supreme court cited *State v. Bybee*, 884 P.2d 906 (Or. Ct. App. 1994), and *Kaysville City v. Mulcahy*, 943 P.2d 231 (Utah Ct. App. 1997), in affirming the conviction of a commercial truck driver for DWI when another identified truck driver saw Frette drinking beer in the cab of his truck at a commercial-truck parking lot behind the McDonald's restaurant in Springdale and called the police department to report what he had seen. The police responded and approached Frette based solely upon this information, which led to his arrest for driving while intoxicated.

In *Bybee*, a convenience-store employee called the police to report a drunken driver that had just left the store, giving the license number and the direction the car was traveling on a particular street. The officer who responded to the call located the vehicle driving on the named street, and while he did not notice any unusual driving patterns, he stopped the car on the sole basis of the report that he was given from dispatch. Our supreme court cited the analysis found in *Bybee* for determining the reliability of a citizen–informant's report to establish reasonable suspicion to justify a stop:

> The Oregon Court of Appeals held that the officer had reasonable suspicion to justify the stop under the totality of the circumstances. When reasonable suspicion is based solely on a citizen-informant's report, the report must contain some indicia of reliability. Three factors in determining indicia of reliability are as follows: 1) whether the informant was exposed to possible criminal or civil prosecution if the report is false; 2) whether the report is based on the personal observations of the informant; and 3) whether the officer's personal observations corroborated the informant's observations. The first factor is satisfied whenever a person gives his or her name to authorities or if the person gives the information to the authorities in person. With regard to the second factor, "an officer may infer that the information is based on the informant's personal observation if the information contains sufficient detail that 'it [is] apparent that the informant had not been fabricating [the] report out of whole cloth . . . [and] the report [is] of the sort in which in common experience may be recognized as having been obtained in a reliable way.'" The

third and final element may be satisfied if the officer observes the illegal activity or finds the person, the vehicle, and the location as substantially described by the informant.

The *Bybee* court examined these factors and concluded that the informant's report had sufficient indicia of reliability. First, the clerk gave his name, location, and number to the police, exposing himself to liability if the report proved false. Second, portions of the clerk's report indicated that he had personally seen the defendant, "he came in just a minute ago," "he's driving," "he was heading South on Ninth." Finally, the officer was able to corroborate the informant's observations; he saw a small blue convertible driving on the same street and in the same direction as reported.

*Frette*, 331 Ark at 118, 959 S.W.2d at 741–42 (citations omitted).

In *Mulcahy*, a person called the police, identified himself, and reported that a drunk person he thought was named Joe had just been at his front door, had driven off in a white car that was possibly a Toyota Celica, and was traveling east on the road in front of Davis High School. An officer who was in the vicinity of the high school saw a white car that matched the description given in the dispatch, stopped the car, smelled alcohol, and arrested the driver for DUI. In finding this case applicable in *Frette*, the supreme court stated:

The *Mulcahy* court framed the issue as "whether reasonable suspicion may be based on an informant's report of a drunk driver, absent corroboration by a police officer of traffic violations or intoxications." Like the Oregon Court of Appeals above, the Utah Court of Appeals used three factors in determining the reliability and sufficiency of the informant's report. The first factor was the "type of tip or informant involved." By contrast to an anonymous caller, "an identified 'citizen-informant' is high on the reliability scale," and "[t]he ordinary citizen-informant needs 'no independent proof of reliability or veracity.'" the second factor was "whether the informant gave enough detail about the observed criminal activity to support a stop." Regarding this factor, the court noted that a tip is more reliable if the informant observed the details personally, as opposed to passing on information from a third party. The final factor considered is whether the officer's personal observations confirm the informant's tip.

Applying these factors, the *Mulcahy* court noted that Olsen was an identified citizen-informer, providing information as a witness. By giving his name and address, he exposed himself to prosecution for making a false report. Second, Olsen's description was sufficiently detailed - he reported a "drunk individual" at his front door who drove off in a white car (possibly a Celica) out of the subdivision on the main road in front of the high school. Moreover, Olsen personally observed these details. Finally, the officer corroborated the informant's report by finding "the described vehicle going in the direction and on the highway reported by the caller," only a few minutes after the dispatch.

*Frette*, 331 Ark. at 119-20, 959 S.W.2d at 742-43 (citations omitted).

Further, our supreme court also stated:

[W]e would be remiss in not first emphasizing the significant policy considerations present where a tip reports a driver who is drinking. This court has previously recognized the magnitude of the State's interest in eliminating drunk driving in comparison to relatively minimal intrusions on motorists. In balancing the rights of a motorist to be free from unreasonable intrusions and the State's interest in protecting the public from unreasonable danger, one court has stated that "[a] motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible. . . . The 'totality' of circumstances tips the balance in favor of public safety and lessens the . . . requirements of reliability and corroboration."

*Frette*, 331 Ark. at 120-21, 959 S.W.2d at 743 (citations omitted).

■ The facts of the case at bar fit within the reasoning set forth in *Frette* and *Bohanan*. Here, there was an identified informant, Larry Paul Davis, who personally observed appellant and his actions, and the information Davis gave to the Springdale Police Department as to the type of vehicle appellant was driving and the direction in which it was headed was able to be independently corroborated by Officer Chatfield. Therefore, under a totality-of-the-circumstances analysis, the trial judge's denial of appellant's motion to suppress was not clearly erroneous or against the preponderance of the evidence.

■ Concluding that the officer had reasonable suspicion to stop appellant based solely upon the tip received from Davis, we must next determine if the stop, which was made by Officer Chatfield outside of his territorial jurisdiction of Springdale, falls within any of the exceptions to the rule that an officer cannot arrest outside his territorial jurisdiction. Officers may arrest outside their territorial jurisdiction in four instances: (1) when the officer is in fresh pursuit; (2) when the officer has a warrant for arrest; (3) when a local law enforcement agency has a written policy regulating officers acting outside its territorial jurisdiction and when said officer is requested to come into the foreign jurisdiction; (4) when a sheriff in a contiguous county requests an officer to come into his county to investigate and make arrests for violations of drug laws. *Thomas v. State*, 65 Ark. App. 134, 985 S.W.2d 752 (1999) (citing *Henderson v. State*, 329 Ark. 526, 953 S.W.2d 26 (1997)).

■ The only exception possibly applicable in the present case is the first instance, when an officer is in fresh pursuit, and we hold that the officer was in fresh pursuit of appellant at the time the stop was made. Our decision in *King v. State*, 42 Ark. App. 97, 854 S.W.2d 362 (1993), supports this determination. Although the facts leading up to the stop in *King* were based upon the officer's personal observations of appellant's erratic driving, this court held that because the officer had the authority to stop, or to stop and arrest, the appellant before he left the jurisdiction, he remained within his bounds of authority when he followed the appellant outside his jurisdiction and then made the stop and arrest.

■ Likewise, we arrive at the same conclusion in the present case. In *Frette, supra*, our supreme court, in discussing *State v. Evans*, 692 So.2d 216 (Fla. Dist. Ct. App. 1997), held, "Although the investigating officer did not have all of this information given by the caller to the dispatcher, it was imputed from the dispatcher to the officer." *Frette*, 331 Ark. at 114, 959 S.W.2d at 739. In the present case, based upon the information contained in the informant's tip, all of which was imputed to Officer Chatfield, he had the

authority to stop appellant when he first encountered him within the city limits of Springdale, and that authority extended outside of his territorial jurisdiction when he followed appellant out of Springdale and made the stop in neighboring Fayetteville.

Affirmed.

NEAL and BAKER, JJ., agree.