Kenneth K. McCONNELL v. STATE of Arkansas

CA CR 03-410 146 S.W.3d 370

Court of Appeals of Arkansas
Divisions IV and III
Opinion delivered February 11, 2004

[Rehearing denied March 24, 2004.⁵]

---

* GRIFFEN and ROAF, JJ., would grant rehearing.

Taylor Law Firm, by: John Mikesch, for appellant.

Mike Beebe, Att'y Gen., by: David J. Davies, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. Appellant, Kenneth J. McConnell, appeals the Washington County Circuit Court's denial of his motion to suppress. Appellant entered a conditional plea of guilty to driving while intoxicated, fourth offense, and was sentenced to six years' imprisonment with five years suspended and a $1,000 fine. Appellant has two arguments on appeal. First, appellant argues that the trial court erred in denying his motion to suppress in that the arresting officer violated Arkansas Rule of Criminal Procedure 3.1, the Fourth Amendment to the United States Constitution, and Article 2 of the Arkansas Constitution because he lacked reasonable suspicion to stop the dark BMW driven by appellant. Second, appellant argues that the officer's stop of the dark BMW should be suppressed because the tip phoned in to the Fayetteville Police Department by the known informant did not contain sufficient indicia of reliability as articulated in Frette v. City of Springdale, 331 Ark. 103, 959 S.W.2d 734 (1998). We affirm.

On the evening of July 10, 2002, Michael Scott Stanley, a

security officer working at the Cliffs Apartments in Fayetteville, came into contact with a dark BMW. Stanley reported to the dispatcher at the Fayetteville Police Department that once the occupant of the BMW saw Stanley, the BMW took off up the hill to a dead end. Even though the BMW's occupant saw Stanley following him, the car continued into a dead end area. The driver of the BMW turned around and came back down the hill, making a hard right turn and "flooring" the vehicle. Stanley stated that there was a bulldozer there, which the BMW barely avoided. The driver then backed the BMW all the way down the hill, past Stanley, and sped away. Stanley chased him until he exited the parking lot. Stanley gave both a description of the car and the license plate number to the dispatcher. He also stated that there appeared to only be one occupant in the BMW. He explained that the vehicle turned east out of the parking lot and then turned again traveling north. Stanley provided his name, phone number, and date of birth to the dispatcher.

Officer Crisman testified at the suppression hearing that he responded to the dispatch. Dispatch reported to him that the vehicle had left the vicinity of the Cliffs Apartments. He reported to dispatch that he had located a car matching the description and with the same license plate number given by Stanley approximately three to four miles away from the Cliffs Apartments traveling north. Officer Crisman pulled the vehicle over behind the Butcher Block on College Avenue. Officer Crisman testified that approximately seven minutes had passed between the time Officer Crisman heard the dispatch and the time that he stopped appellant. He testified that he remembered indicating in his report that he was advised of a reckless driver; however, the tape of the call did not mention the term "reckless." He also testified that a portion of the area in which Stanley observed the vehicle was under construction. On this particular evening, law enforcement was monitoring the construction area to prevent theft. Under these circumstances, Officer Crisman suspected a possible breaking and entering.

Following a hearing, the trial court denied appellant's motion to suppress. Appellant then entered a conditional plea of guilty, reserving his right to appeal the lawfulness of the stop. This appeal followed.

 Appellant argues that the trial court erred in denying his motion to suppress in that the arresting officer violated Arkansas Rule of Criminal Procedure 3.1, the Fourth Amendment to the

United States Constitution, and Article 2 of the Arkansas Constitution because he lacked reasonable suspicion to stop the dark BMW. Upon review of a trial court's denial of a motion to suppress, we make an independent determination based upon the totality of the circumstances; the trial court's ruling is reversed only if it is clearly erroneous or against the preponderance of the evidence. *Frazer v. State*, 80 Ark. App. 231, 94 S.W.3d 357 (2002) (citing *Mullinax v. State*, 327 Ark. 41, 938 S.W.2d.801 (1997)). Arkansas Rule of Criminal Procedure 3.1 (2003) provides that an officer may stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit a felony or misdemeanor involving forcible injury to persons or damage to property. Reasonable suspicion is defined by Ark. R. Crim. P. 2.1 as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." *Saulsberry v. State*, 81 Ark. App. 419, 102 S.W.3d 907 (2003).

██ Appellant relies on the testimony of Officer Crisman, which appellant asserts did not give rise to a reasonable suspicion in this case. Appellant focuses on the fact that Officer Crisman testified that he did not witness any violation of a traffic law by appellant and that he stopped appellant solely on the information from the dispatcher. Appellant also focuses on the fact that dispatch did not indicate that a crime had been committed and that Officer Crisman testified that he did not believe any misdemeanor or felony had been committed or was about to be committed. However, the existence of a reasonable suspicion must be determined by an objective standard, and due weight must be given to the "specific reasonable inferences" an officer is entitled to derive from the situation in light of his experience as a police officer. *Muhammad v. State*, 64 Ark. App. 352, 984 S.W.2d 822 (1998) (citing *Coffman v. State*, 26 Ark. App. 45, 759 S.W.2d 573 (1988); *Terry v. Ohio*, 392 U.S. 1 (1968)).

██ ██ It is true that neither Stanley nor the dispatcher specifically stated that appellant was driving recklessly, was drinking and driving, or had committed any specific crime. However, the conduct reported to the police that the driver of this vehicle was driving erratically and driving backwards down a hill at high speed and narrowly missing a bulldozer before speeding away,

supports a reasonable suspicion that the driver was impaired. This court in *Frazer, supra* stated that:

> This court has previously recognized the magnitude of the State's interest in eliminating drunk driving in comparison to relatively minimal intrusions on motorists. In balancing the rights of a motorist to be free from unreasonable intrusions and the State's interest in protecting the public from unreasonable danger, one court has stated that "[a] motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible. ... The 'totality' of circumstances tips the balance in favor of public safety and lessens the . . . requirements of reliability and corroboration." (citations omitted).

(quoting *Frette*, 331 Ark. at 120-21, 959 S.W.2d at 743). Under these facts, we find that a reasonable suspicion existed for Officer Crisman to stop appellant.

Appellant also argues that the officer's stop of the dark BMW should be suppressed because the tip phoned into the Fayetteville Police Department by the known informant did not contain sufficient indicia of reliability. In *Bohanan v. State*, 72 Ark. App. 422, 38 S.W.3d 902, (2001), this court stated:

> When reasonable suspicion is based solely on a citizen–informant's report, the three factors in determining reliability are:
>
> 1. Whether the informant was exposed to possible criminal or civil prosecution if the report is false.
>
> 2. Whether the report is based on personal observations of the informant.
>
> 3. Whether the officer's personal observations corroborated the informant's observations.

*Bohanan*, 72 Ark. App. at 429, 38 S.W.3d at 907.

Appellant argues that the third prong of the above test was not met because the person, the vehicle, and the location were not corroborated by Officer Crisman. Specifically, appellant asserts that the known informant did not identify appellant; thus, Officer Crisman did not find the person identified by the informant. Appellant also specifically asserts that the vehicle was found 4.2 miles away from the location described by the informant and traveling in a different direction. We are not persuaded that the

third prong of the test was not met in this case. Here, there was an identified informant who personally observed appellant's actions, and the information Stanley gave to the Fayetteville Police dispatcher as to the type, color, and license number of the vehicle and the general direction of travel were all independently corroborated by Officer Crisman. Officer Crisman testified that he verified that the vehicle was the one described by Stanley by both description and the license plate number before he stopped the vehicle. The vehicle was only approximately 4.2 miles from the Cliffs Apartments, the vehicle was traveling in the direction that Stanley described, and Officer Crisman stopped the vehicle within approximately seven minutes of receiving the dispatch. Therefore, under the totality of the circumstances, the trial court's denial of appellant's motion to suppress was not clearly erroneous. We affirm.

ROBBINS, BIRD and CRABTREE, JJ., agree.

GRIFFEN and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse this case because the arresting officer lacked "reasonable suspicion" to stop Kenneth McConnell pursuant to Ark. R. Crim. P. 3.1, based upon the information provided by the informant in this case, the security guard at the Cliffs Apartments. The security guard related the following relevant information:

> MR. STANLEY: Okay, I'm a security guard here, and I just had a black BMW pull up behind me, and I guess they were turning around, and I started getting out of the car trying to figure out who they were, and I thought most people stop, but as soon as he saw me he pulled it out of here and he went up the hill, so I just kind of followed him up the hill, which is a dead-end where there are residents that are moving in. He saw me and he went on up in there and he turned around and came down and he made a hard right turn and floored it again, and there was a bulldozer sitting there and he stopped, but he barely missed it, and he backed back down the hill, and I chased him out of here.

> CENTRAL COMMAND: Okay.

> MR. STANLEY: I have no idea what his problem was, but I have the license plate number.

> CENTRAL COMMAND: Which way did he leave?

\* \* \*

CENTRAL COMMAND: And it was driving all over the Cliffs Apartments, and then you chased it up that dead-end by the bulldozer?

MR. STANLEY: Well, what happened, there's a certain spot up here that there's five new houses up here, and they've got me sitting up to watch them. And he came up the only way in and he came straight in to where I was, and my lights were on because I had everything on, and then he just turned around, and when I started getting out that's when he took off. He turned right, he was going west up that hill, and then he turned north into a little apartment complex, because there's five, there's three on top and two on bottom. Then he figured out he couldn't get out of there, so he turned around and came back, and I had already made my way up to that road where he was at, and he saw me and he tried turning right, but there was a bulldozer — or I think it was a bulldozer sitting there, and he almost slammed into the bucket part of it, and he reversed all the way down the hill past me, I turned around, and he speeded out of here. I chased him all the way to the entrance of the Cliffs, and I didn't follow him any further.

In turn, Central Command relayed the following information to the officer who stopped Mr. McConnell:

CENTRAL COMMAND: 10-4. Check the area northbound from the Cliffs Apartments. About five to ten minutes ago. You're going to be looking for a black BMW, Arkansas VL 149 Edward Mary Sam. 149 Edward Mary Sam, that does come back to a black BMW to a Mr. McDonald (sic). I guess security was following him around the apartment complex and he kept avoiding him, then he went up a hill where they were building five new buildings, got by a bulldozer, and then he reversed all the way out of the apartment complex while security was following him. If you would, just check the area.

This case is not analogous to *Frazier v. State*, 80 Ark. App. 231, 94 S.W.3d 357 (2002), in which the informant reported a face-to-face encounter with an intoxicated driver through a drive-through window, nor does it comport with *Frette v. State*, 331 Ark. 103, 959 S.W.2d 724 (1998), in which the informant reported seeing a man drinking beer while sitting in the cab of his parked tractor-trailer. Moreover, here, the security guard was in fact the instigator of appellant's evasive behavior by attempting to confront him and in

chasing him. It is surely not an offense to attempt to avoid contact with a person who approaches you in such a manner on an off-street parking lot. An examination of the informant's call to the police reflects, not someone driving erratically or recklessly on the public streets, but rather a driver seeking to avoid an off-street encounter.

Indeed, the arresting officer testified only that he "thought that there might have been a possible burglary or breaking and entering," and made no mention of reckless or erratic driving. The informant in this case reported no driving offense, and no suspicion of intoxication; the majority does not even suggest that there was reasonable suspicion to stop based on the reason given by the officer, that a breaking and entering might have occurred. There was thus no reasonable suspicion to stop McConnell on either of the two bases advanced by the State, and I would reverse.

GRIFFEN, J., joins.