RENDERED:  MARCH 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1291-MR

CHARLES HUPP                                                                              APPELLANT


APPEAL FROM MADISON CIRCUIT COURT
v.         HONORABLE WILLIAM G. CLOUSE, JR., JUDGE
ACTION NO. 16-CR-00405-001


COMMONWEALTH OF KENTUCKY                                          APPELLEE


AND
NO. 2019-CA-0697-MR

KATELYN SMITH                                                                            APPELLANT


APPEAL FROM MADISON CIRCUIT COURT
v.         HONORABLE BRANDY O. BROWN, JUDGE
ACTION NO. 16-CR-00405-002


COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING APPEAL NO. 2018-CA-1291-MR AND
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING APPEAL NO. 2019-CA-0697-MR

** ** ** ** **

BEFORE:  ACREE, KRAMER, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Charles Hupp brings Appeal No. 2018-CA-1291-MR from a Final Judgment and Sentence of Imprisonment by the Madison Circuit Court entered June 6, 2018, upon a conditional plea of guilty to various felony offenses. Katelyn Smith brings Appeal No. 2019-CA-0697-MR from a Final Judgment and Sentence of Imprisonment by the Madison Circuit Court entered April 1, 2019, upon a conditional plea of guilty to various misdemeanor and felony offenses.[1] For the reasons stated, we affirm Appeal No. 2018-CA-1291-MR, and affirm in part, reverse in part, and remand Appeal No. 2019-CA-0697-MR.

## BACKGROUND

At approximately 12:44 a.m. on June 6, 2016, Officer Carl Roark of the Richmond Police Department was contacted on his radio by dispatch regarding a tip received from Smith's mother. According to the tip, Hupp and Smith both had current arrest warrants and were departing the Blue Moon Bar in Richmond in a black Mercedes automobile. Furthermore, the tip indicated that Hupp was a convicted felon, a drug dealer, and was believed to be armed with a handgun. Smith's mother also told dispatch she wished to remain anonymous because she was afraid of Hupp. Based on the direction the Mercedes was said to be traveling, Officer Roark knew the vehicle would be coming toward his location. A few

---

[1] Charles Hupp and Katelyn Smith were arrested together on the morning of June 6, 2016, for the various offenses charged. They were indicted together by the Madison County Grand Jury on August 10, 2016.

minutes later, Officer Roark observed a black Mercedes traveling toward him. Reasoning that this must be the vehicle described by dispatch and that it contained individuals with active warrants, Officer Roark initiated a traffic stop.

After stopping the vehicle, Officer Roark made contact with the driver, who provided identification confirming he was Charles Hupp. He admitted having a warrant out of Florida but claimed it was not extraditable. Another officer, Stephen Madden, arrived on the scene and began to question the adult female passenger. She did not present identification, but she asserted her name was Allison Tye and provided a social security number. When he checked the information, Officer Madden did not believe this name or social security number belonged to her because "Allison Tye" was a juvenile, and the woman in the vehicle appeared to be older. As Hupp was asked to step out of the vehicle and escorted toward the cruiser, he told his passenger, "Katie, don't let anybody touch this car," which further indicated the woman was not who she claimed to be. At some point, Sergeant Brian Eaves of the Richmond Police Department arrived on the scene, and he appeared to know the woman. A photograph confirmed her name was actually Katelyn Smith. Officer Madden testified that Smith also had an outstanding arrest warrant.

When Officer Roark removed Hupp from the vehicle, he asked if he had drugs or firearms inside the vehicle. Hupp denied there was any contraband.

Officer Roark then performed a *Terry*[2] pat down of Hupp and discovered a pistol magazine in the pocket of the shorts he was wearing.  When the officer asked Hupp about the pistol magazine, Hupp became noncompliant, although he told Officer Roark that the shorts he was wearing belonged to the owner of the Mercedes.  Officer Roark then described what happened next in his testimony at the suppression hearing:

> Commonwealth:  "And, at this time, did you ask Mr. Hupp if he was a convicted felon?"
>
> Ofc. Roark:  "At some point in time in that exchange, I did, yes."
>
> Commonwealth:  "And is he a convicted felon?"
>
> Ofc. Roark:  "He is."

Notably, during this exchange, Officer Roark did not specify *when* he learned Hupp was a convicted felon, and this ambiguity was not clarified by Hupp's or Smith's defense attorneys on cross-examination.

The discovery of the pistol magazine led Officer Roark to believe Hupp was not telling the truth when he denied there was a firearm inside the vehicle.  He then initiated a search of the vehicle for evidence of a convicted felon being in possession of a handgun.  In the process of searching for the firearm, Officer Roark observed white residue on the driver's side floorboard and what he

---

[2]  *Terry v. Ohio*, 392 U.S. 1 (1968).

described as "glassy shards" of what appeared to be methamphetamine crystals on the driver's seat. Upon searching the vehicle, the officers discovered a .40 caliber handgun in the glove compartment, 21.7 grams of methamphetamine in a headphones case, and 2.8 grams of heroin, spoons with burn marks, and syringes inside a purse. They also found a safe in the trunk, which unlocked with a key found on Hupp's car key ring. Inside the safe, the officers found 134.6 grams of methamphetamine, 18.9 grams of heroin, .40 caliber ammunition, plastic bags, and syringes. A search of Hupp's wallet, found in the driver's seat of the vehicle, revealed he was carrying $1,705 in cash. Later, after getting a search warrant, the police conducted a more thorough search of the vehicle and found additional contraband in the form of multiple cell phones and electronic devices, a burned spoon with residue, syringe caps, a syringe, plastic bags containing 6.6 grams of methamphetamine, prescription bottles, and a filled syringe which was suspected to contain heroin.

As a result of this incident, Hupp and Smith were jointly indicted on the following charges: second-degree possession of a controlled substance; possession of drug paraphernalia; first-degree trafficking in a controlled substance (more than two grams of methamphetamine, enhanced by possession of a firearm); and first-degree trafficking in a controlled substance (more than two grams of heroin, enhanced by possession of a firearm). Additionally, the indictment charged

-5-

Hupp with being a convicted felon in possession of a handgun and being a first-degree persistent felony offender, while Smith faced an additional charge of identity theft.

Hupp subsequently moved the Madison Circuit Court to suppress evidence resulting from an unlawful investigative traffic stop, which he asserted violated his rights under the Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution.[3]  During the suppression hearing, the circuit court heard testimony conforming to the aforementioned narrative from the three police officers on the scene.  Hupp argued the search of the vehicle after his traffic stop violated principles announced by the United States Supreme Court in *Arizona v. Gant*, 556 U.S. 332 (2009).  Smith argued there was an insufficient basis for the traffic stop, reasoning that the call to dispatch could not be verified as coming from Smith's mother, and, thus, it should be considered an anonymous tip.  Ultimately, the circuit court denied the motion to suppress, finding the tip was not anonymous and there was reasonable articulable suspicion to stop the vehicle.  The court also found that the discovery of a loaded magazine on Hupp, a convicted felon, gave probable cause to search the vehicle for evidence of a felon in possession of a firearm.

---

[3] Katelyn Smith joined in the motion to suppress and a joint hearing on the motion was conducted with both defendants present before Judge William G. Clouse, Jr., of the Madison Circuit Court on February 21, 2017.  The circuit court denied the motion by order entered February 21, 2017.

Appellants subsequently entered conditional guilty pleas preserving their rights to appeal the denial of the suppression motion. On June 6, 2018, the circuit court sentenced Hupp to a total of ten-years' imprisonment based on two counts of trafficking in a controlled substance and one count of being a convicted felon in possession of a handgun. On April 1, 2019, the circuit court sentenced Smith to a total of eight-years' imprisonment based on one count of possession of a controlled substance, one count of possession of drug paraphernalia, two counts of trafficking in a controlled substance, and one count of identity theft. These appeals followed.[4]

ISSUES

The sole joint issue raised by appellants in this appeal is whether the circuit court erroneously denied their motion to suppress, arguing: (1) Officer Roark did not have reasonable articulable suspicion to initiate a traffic stop of the vehicle; and (2) the officers did not have probable cause to search the vehicle for evidence of a convicted felon in possession of a firearm because there was no evidence presented at the suppression hearing that established the officers knew Hupp was a convicted felon at the time of the search. Smith also argues on appeal that court costs were improperly assessed against her.

---

[4] Hupp filed a tardy notice of appeal on July 31, 2018. By order entered December 19, 2018, this Court granted Hupp a belated appeal. Smith's appeal was timely filed on May 1, 2019. Upon completion of briefing, Hupp's appeal was abated pending completion of Smith's appeal, whereupon the cases were submitted together to be considered by the merits panel.

STANDARD OF REVIEW

This Court's standard of review of a trial court's denial of a motion to suppress requires a two-step analysis. First, the trial court's factual findings are conclusive if supported by substantial evidence. *Milam v. Commonwealth*, 483 S.W.3d 347, 349 (Ky. 2015). Second, the court's application of the law to those facts and legal conclusions is reviewed *de novo*. *Id.*; *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015).

ANALYSIS

To determine whether an investigatory stop of an automobile is lawful, the Kentucky Supreme Court has provided the following guidance:

> In order to perform an investigatory stop of an automobile, there must exist a reasonable and articulable suspicion that a violation of the law is occurring. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660, 673 (1979). Complications arise when, as here, the information serving as the sole basis of the officer's suspicion is provided by an anonymous informant, whose veracity, reputation, and basis of knowledge cannot be readily assessed. In situations such as these, we are required to examine the totality of the circumstances, and to determine whether the tip, once suitably corroborated, provides sufficient indicia of reliability to justify an investigatory stop. *Alabama v. White*, 496 U.S. 325, 332, 110 S. Ct. 2412, 2417, 110 L. Ed. 2d 301, 310 (1990).

*Collins v. Commonwealth*, 142 S.W.3d 113, 115 (Ky. 2004). An anonymous tip, even though accurate in its details, will not justify an investigatory stop unless "the

investigating officer . . . independently observe[s] any illegal activity, or any other indication that illegal conduct was afoot." *Brooks v. Commonwealth*, 488 S.W.3d 18, 22 (Ky. App. 2016) (quoting *Collins*, 142 S.W.3d at 116); *see also Florida v. J.L.*, 529 U.S. 266, 269-70 (2000). However, tips from "citizen informants who either (1) have face-to-face contact with the police; or (2) may be identified are generally competent to support a finding of reasonable suspicion (and in some cases, probable cause)[.]" *Commonwealth v. Kelly*, 180 S.W.3d 474, 478 (Ky. 2005).

Appellants argue the call from Smith's mother to dispatch should be considered an anonymous tip because there was no independent verification that she was the caller. An examination of the case law, however, reflects that there is no requirement for telephoned tips to police by named persons to be independently verified before being considered reliable citizen tips. In *Kelly*, the Kentucky Supreme Court cited a case from a sister jurisdiction, *Frazer v. State*, 80 Ark. App. 231, 94 S.W.3d 357, 361 (2002), for the proposition that a "telephone tip by a citizen informant who gave his name was sufficient to support an investigatory stop of a vehicle that the informant suspected was being operated by an intoxicated person." *Kelly*, 180 S.W.3d at 478.

Furthermore, upon examining the record, we conclude the circuit court correctly found Officer Roark had reasonable articulable suspicion to make

the traffic stop. "At a suppression hearing, the ability to assess the credibility of witnesses and to draw reasonable inferences from the testimony is vested in the discretion of the trial court." *Sowell v. Commonwealth*, 168 S.W.3d 429, 431 (Ky. App. 2005) (citing *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky. 2002)). The circuit court heard the officer testify about how he received information that a black Mercedes would be traveling in his direction. Officer Roark testified that seeing a Mercedes at that time of night in that location would be "very rare." Additionally, consistent with the tip, the vehicle contained two individuals, a male and a female, both of whom had current outstanding arrest warrants. Even though corroboration of a citizen informant's tip is not required to justify a stop, the other information provided by the tip proved accurate. The circuit court did not err in finding the stop was justified by reasonable articulable suspicion.

For the second part of their suppression issue, appellants contend the police officers did not have probable cause to search the vehicle for evidence of a convicted felon in possession of a firearm because there was no evidence presented at the suppression hearing that the officers knew Hupp was a convicted felon at the time of the search. Appellants assert Officer Roark's answer, "He is[,]" in response to the Commonwealth's question about Hupp's status as a convicted felon, does not necessarily mean the officers knew about his status at the time of the search. Taking this as a starting point, appellants then argue the circuit court

-10-

lacked substantial evidence to rule that Hupp *was* a convicted felon in order to justify the search of the vehicle for evidence of a convicted felon in possession of a firearm.

We begin by noting that, despite appellants' claims to the contrary, this particular sub-issue does not appear to have been preserved for appeal. The arguments presented to the circuit court focused on (1) the reliability of the tip, (2) whether the informant could be verified or was anonymous, and (3) whether the subsequent search was valid under *Arizona v. Gant*. From our review, it does not appear that the issue of whether the officers knew Hupp was a convicted felon at the time of the search was ever specifically presented to the circuit court. Indeed, our review of the hearing record reflects everyone present at the hearing appeared to accept at face value Officer Roark's response of "He is[,]" to the question of whether Hupp was a convicted felon. This is further reflected in the circuit judge's handwritten finding that "Hupp is a convicted felon." Record on Appeal at 73. Defense counsel for Hupp and Smith could have cross-examined Officer Roark regarding whether he knew at the time of the search that Hupp was a convicted felon, and yet they did not take the opportunity to do so. Our review of both the motion to suppress and the video record of the hearing, including counsels' closing arguments at the hearing, supports our conclusion that the issue was not properly

preserved for appellate review.[5]  It has been a long-standing rule of appellate practice in Kentucky that a party may only present those issues on appeal that were presented to the trial court for consideration.  *Henderson v. Commonwealth*, 438 SW.3d 335, 343-44 (Ky. 2014).  The issue was not raised at the suppression hearing.

However, an appellate court may consider an issue on appeal that was not presented or otherwise insufficiently raised below for palpable error that affects the substantial rights of a party.  Kentucky Rules of Criminal Procedure 10.26.  In this case, palpable error review was not requested and given the totality of the circumstances surrounding the search, we decline to consider this issue for the first time on appeal.  Thus, we find no error in the circuit court's ruling that there was sufficient probable cause to search the vehicle.

Finally, Smith individually appeals the circuit court's order for her to pay court costs as part of the judgment entered against her.  She asserts the circuit court erred when it ordered her to "pay court costs within six (6) months of release from imprisonment[,]" arguing such an order is forbidden by Kentucky Revised Statute (KRS) 23A.205(3).  Smith's Brief at 16.  KRS 23A.205(3) allows a court to

---

[5] Pursuant to Kentucky Rules of Civil Procedure 76.12(4)(c)(v), Smith states in her brief that the issue was preserved at the hearing, which the video record does not support.  Smith's Brief at 9. Hupp's brief states that the issue was preserved at the hearing and in the motion to suppress. Neither the video record of the hearing nor the record on appeal supports this statement.  Hupp's Brief at 6.

impose court costs by way of an "installment payment plan in accordance with KRS 534.020." However, KRS 534.020(2)(b) mandates "all court costs, fees, and fines shall be paid within one (1) year of the date of sentencing[.]" The Commonwealth concedes error on this point citing *Applegate v. Commonwealth*, 577 S.W.3d 83, 88 (Ky. App. 2018) (holding "the trial court erred in ordering Applegate to pay court costs in installments beginning sixty days after his release, as these necessarily could not be paid within one year of the date of sentencing as required by KRS 23A.205(3)"). Accordingly, we reverse the assessment of court costs against Smith and remand for entry of a new judgment consistent with KRS 534.020(2)(b).

For the foregoing reasons, we affirm the Madison Circuit Court's denial of Hupp and Smith's joint motion to suppress, and final judgments entered against Hupp and Smith, except as concerns the award of the court costs against Smith, which we reverse in part and remand for the entry of a new judgment in Smith's case consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT
CHARLES HUPP:

Brandon Neil Jewell
Frankfort, Kentucky

BRIEFS FOR APPELLANT
KATELYN SMITH:

Robert C. Yang
Frankfort, Kentucky

BRIEFS FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky